We will hear argument next in several cases combined, both of them called 10x Genomics v. Parse Biosciences, 25-1199 and 25-1618, and companion. You may please the court. Just some quick road mapping now that the cases are consolidated. For the second set of cases, the real separate issue there was the 013 patent, where there just wasn't the analysis in the board's final written decision. For everything else across the two cases, the errors are all part of this common pattern in which the board repeatedly allowed Parse to change its theories and then failed to address 10x's counterarguments to those new theories. We saw the morphing of theories over time from the petition, where you're looking at substantially all the mRNA in tissue samples being dual-tagged with seven nucleotide barcodes, to a new theory that's about some of the mRNA in bacteria or yeast and longer barcodes. But even if those changes were accepted, we then have the problem which is we came back and pointed out that their own experts had contradictory testimony on substantially all that the board doesn't address in its final written decision. So can I just try to separate out the following? Suppose I thought that the petition did adequately refer to the possibility to tags without limitation to seven base pairs. And so suppose that was a reasonable reading of the petition, and so the arguments about there just aren't enough, 16,000 plus possibilities of seven base pairs couldn't possibly make this thing effective because there are too many. You need much more than that. But if you had four to the 20th, then you'd have a trillion or something. How much does that strip away from your case? I know you don't want to concede. Without conceding any of that, that puts a dent in it. The board didn't separate out the different strands of this here. It talked about the number of gluotides. It talked about the switch to bacteria or yeast. And it talked about the other shifts that are making altogether. So we don't have a finding from the board that just that alone would have the decision stand. So it certainly would go up. I think another unaddressed point in that is their theory in the petition was that, quote, the method would be identical to the approach already set forth in Linnerson, except that the tags in Linnerson would be conceptually divided. So when we talk about going up, I don't think even if the number's going up there, there's full resolution from the board about, we're not talking about going up to infinity. Linnerson has 20 nucleotide tags. They talk about conceptually dividing that. The only higher number that was offered was they said, well, you go up to 20 or 30. But then you have a 20 to 30 barcode fitting in the 20 tag. Would 20 be too small? I mean, 4 to the 20th is about a trillion. Is that too small a number? It's not that that's necessarily too small a number. It's that it leads to another question, which was the board never made a finding that you would increase Linnerson. Even when it was saying, we're not going to hold you to seven nucleotides. So we had a theory about what was going to fit within Linnerson. The board never addresses this, well, wait a minute, you have this alternative argument about fitting a 20 to 30 nucleotide barcode in the 20 nucleotides of Linnerson. But if we take one step even before that, I don't think that the board itself recognized that quote, the petition clearly proposes using seven nucleotides. I'm sorry, clearly proposed what? Using seven nucleotides. Counsel, do you agree that the amplification bias and obvious design choice are independent motivations to combine? No, not at all. So the design choice argument, as it was, was a single sentence in the petition under a section that began by discussing analogous arguments. So the breakdown of the petition is you have, first, opposed it would have found McCloskey and Linnerson to be analogous art. Do you have a page you want us to look at? Yes, this is 1093 of the appendix. Of which appendix? Sorry, volume one of the appendix. Of which appeal? Of the first appeal, the 1199. Did you say page 1093? 1093. I thought the petition starts at around 8000. My petition starts at 8001. Or is this the wrong of the two cases? I think you're right. Okay. So apologies, Your Honor. It's 8064. This is the first appeal, the 1199, volume three. So the breakdown we have in the petition is the structure you can see starting at 8064. First, opposed it would have had reason to consider McCloskey because Linnerson and McCloskey are analogous art. We have under that this statement about the design choice. Where they talk about motivation, it's on 8065. You can see second, opposed it would have been motivated to combine Linnerson and McCloskey. And then it continues, if you jump over to 8067, you can see opposed it has a reasonable expectation of success. So what we have is this alleged design choice argument that isn't offered as here's a separate motivation to combine. It's under the analogous art argument. I mean, but doesn't it say first and second? Why wouldn't those imply they're two different things? Oh, because the first, what is the first? First, opposed it would have had reason to consider McCloskey because Linnerson and McCloskey are analogous art. So it's just setting up, these references would be considered together. And then it moves on, and so it doesn't set up the design choice as here's a separate motivation based on the design choice, the motivation. Even if you saw it as a separate argument, though, the entirety of the design choice argument is a single sentence that cites their expert. What their expert says here, their expert, this is the bottom of 8064. So this is the single, would have been obvious design choice. They cite their expert testimony. The paragraph 187 you see there at the bottom of 8064, that's their expert just saying these are in the same field, they're analogous art. And the paragraph 192 is his conceptual division of Linnerson's tag argument, to which we responded to at length. So in addition to the placement of the design choice argument, substantively there isn't any independence to the design choice. Where the entirety of the argument is a single sentence that relies solely on this cross-reference to their expert declaration, where that portion of the expert declaration is something that we rebutted at length. There isn't an independent design choice argument here that could sustain the board's opinion. It all collapses into the other arguments and the strength of the argument. And that's with good reason, because we do have to be disciplined around the concept of design choice, lest it swallow obviousness law. And so when we are there rebutting at length the motivation to combine, to treat that as, oh, that alone is a separate path, would be incorrect. Now, on the amplification bias, I draw particular attention to the substantially all issue. So there, the board, the setup was, the petition is saying you would have to sample polynucleotide, which is absolutely correct, because to avoid the amplification bias, if you're leaving things untagged, then after amplification you're going to have a confusing count. The board approached that as, well, that's the sample, it's not all the polynucleotides in the cell. What it wasn't addressing was that... Isn't it the case that you could at least make some progress against amplification bias by testing fewer than substantially all of the nucleotides? In, I mean, maybe in a different... It's a matter of degree, isn't it? Well, because if you're doing fewer... If you sample everything, not just substantially, but everything, then you have a way of determining with 100% accuracy whether there's amplification bias, correct? Right, if you successfully tag everything, yes. So if you do a sampling of less than everything, depending on what percentage of the body of molecules you're testing, you're going to get some lesser degree of confidence that you're finding amplification bias, but still some. I'm not sure I'm following, but by sampling you mean tag fewer than... You tag, I'm sorry, you tag fewer. Right, if you tag fewer and then... So imagine you don't have enough tags, for example, which is what we have here. If you tag fewer, and then you amplify everything using the universal amplification technique they're doing, then what you end up with is a mess on your hand. It may be a mess, but it's less of a mess than if you don't tag any, right? Because you're going to find some duplication. At least, that's my understanding. I didn't say anything to suggest why that is not true, I'll put it that way. I mean, we don't have any findings from the board on that. I understand, but I'm trying to get my bearings here. You're making an argument that if they didn't tag pretty much everything, then it's useless. I don't see that you've... You certainly haven't said, so I'd need that that's the case. Maybe you can now, but you didn't in your brief. Maybe we're talking about... We're saying you really have to be tagging everything in the sample for it to be useful, because if you're not... I want to know why. Why is it not the case that if you tag fewer than all of the molecules, that you will nonetheless, depending on how many you do, be able to get some assurance that there hasn't been amplification bias, or some indication of the degree of it? I think the issue is, imagine there's gene overexpression, which would be one of the things we're looking at for cancer. If you've started with multiple copies of that polynucleotide, and you're not successfully tagging them all, then you come out of the amplification, and you'll have some that'll be tagged, but you'll have copies of that that won't be tagged, and you won't be able to untangle at that point, which, hold on a second, were there 10 mRNAs to begin with? Were there 3 mRNAs to begin with? You won't know... You won't be able to understand the overexpression that's happening. With precision. Or, I mean, let me just say, they bear the burden of proof on this. There's no evidence in the record about this partial theory. Their partial theory was simply that you would reduce the sample size. Even their petition says, the motivation is to tag each sample polynucleotide. Where the board's going astray is that it's applying McCloskey to Linerson's sample. And as we point out in our SIR reply, their own expert says, Linerson describes a method which is designed to be applied to substantially all mRNA molecules of a given cell. So the distinction the board made is that the board says, I sort of search for substantially all, it says in the sample rather than in the cell. But the point was this was being applied to Linerson's sample, and their own expert in describing Linerson's sample is saying what Linerson's doing is it's releasing everything. And so this is also 7821 of the appendix. Their expert says, a POSA would understand that because mRNA is indiscriminately released from each single cell, and because Linerson does not describe any additional elimination or filtration, the released mRNA sample comprises substantially all mRNA molecules of said cell. So what in the patent itself, though, and the claims themselves require all of the mRNA present to be tagged? The patent itself doesn't have that as an express claim limitation. But this is similar to this court's intelligent biosystems case. It's the theory of the petition. The motivation here is to address amplification bias. And their petition says each sample polynucleotide, and they apply this to Linerson, and their own expert about the passage that's cited in their petition is saying that would be understood as all the mRNA. Then that's an issue that the board needs to grapple with, and you'll find absolutely nothing about that in the board's final written decision. This is our failure to address argument here. We go back and forth on substantially all, but at the end of the day, in our SIR reply, 8407 of the appendix, we make this argument. We say this is what their expert is saying, it was in the other proceeding, and the board doesn't address that. The other failure to address argument we have is on this. The testimony from their expert, Judge Bryson, really going against this idea of, oh, we'd be happy with partial, he says we really want at least a 100 to 1 ratio of tags to make sure that we're tagging everything. We again point this out in our SIR reply, and say their expert is pointing to a number that would have to be much higher, the board doesn't address that in its final written decision. So we have two core failures to address arguments. What exactly then are you saying is wrong in terms of what's addressed on appendix pages 37 to 38 of the first appeal with respect to this, what you've been talking about in terms of tagging? I sense that you're indicating that this is insufficient, but I want to know specifically what you find is insufficient on appendix pages 37 to 38. Correct. So on 37 to 38, the board says two things. First, it says the claims don't require that, that doesn't answer it for purposes of motivation, because of their theory. And then the board, it says, we've searched through, it basically says we see their petition as arguing you have to tag each sample polynucleotide. And it says, so each sample polynucleotide, that may be the sample, that might not be everything in the cell. But what we had said in response to that argument was their own expert has said, looking at the passage from Linnerson, that they were relying on in their petition, that the relevant sample in that portion of Linnerson is substantially all of the mRNA. So the board just stopped short. It said there's a distinction between the sample and everything in the cell, but it didn't ask in their combination applying this to Linnerson, what is the sample that is being applied to there? And the sample there is substantial. So with those two failures to address that I've noted, would be themselves sufficient grounds, there should be a remand. They are set up. One of the reasons that you hear me talking about the SIR reply so much is because we had these shifting theories. No mention whatsoever of bacteria or yeast in the petition. So some of our arguments are responding to things in the reply for the first time, and then the board doesn't address them. No separate design choice rationale, and then we have on the 013, just no discussion whatsoever of the underlying. They jump right to ligation and don't address the underlying. On that, just looking through the papers, it wasn't clear to me that with respect to the 013, there was any discussion or motivation to combine other than with respect to ligand. Can you point me to where you made an argument, as you did with respect to some of the other issues, two other patents, where in the 013 discussion, your patent owner response raises an objection to something other than the ligand. So on, this would be 13382, so volume three of that appendix. If you give me the page number again. 13382. 13382. Oh, the 013, sorry. I still don't have the number. Could you give me the number again? So 13382. So the setup in this set of IPRs is there's an initial argument about ligation, and then on the, there's an argument about lack of particularity there, where we're saying, we don't know what you're talking about, because this petition didn't have the level of detail of some of the other petitions. And so on this issue of McCloskey's length of the barcode, the thrust of these pages is us saying, we don't understand exactly what you're saying in the petition here that you're trying to combine. They then come back in their reply and make a series of arguments sort of similar to what we see in the other proceedings, but not identical. And so the board, and then we come back in our surreply and address that. And then the board doesn't have this. I would say, even if we hadn't said the word here, the board, in motivation to combine, wanted the basic stepping stones here of the analysis. And so if the board didn't have this analysis of why would we be combining these two references in the first place, that would be problematic in its own. I mean, it's just a basic failure. I am conscious of my time. Right. Thank you, Your Honor. Edward Bryness for Parse Biosciences. Good afternoon. If you don't mind, could you start with the 013 since we've got the books open to those pages? This is one of those free-floating issues that we can pin it down and move things along. Thank you. Yeah, I think the issue is, as Your Honor identified it, that everyone considered this to be the ligation patent in the psychology. And the challenge to the motivation to combine here wasn't to the underlying motivation to combine based on amplification bias for Linderson and McMurtry itself. McCloskey, right. McCloskey, excuse me. And so that's why when the court restated what our position was, which we laid out, and that was the same position you've seen in all the two other IPRs, it didn't treat that as a heavily contested item because by the failure of my friend to identify for you where they actually contested that motivation to combine, it wasn't joined up. But in any event, what the board did was it laid out all our arguments on McCloskey and Linderson on motivation to combine based on amplification bias and then said that was sufficient. And then took on the contested issue, which was ligation, the 013 being treated as the ligation patent because it was in the independent claims. So that's how we got there. And I think your questioning of it surfaced that. I think I'd like to start on the main argument of Judge Serrano. You asked the incisive question of if one doesn't accept the seven-nucleotide barcode limitation or cabining for the petition, what's really left of these arguments about numerosity, these arguments about organism, mammalian or not mammalian, and the answer is nothing is left of those. Because first they have to create the number problem before they can get into these other issues. If there's no number problem, if the teaching is that you can use any amount of nucleotides, you just have to use this flexible formula that's disclosed by the prior art, then you just don't have to worry about the confines. So let me start at the beginning. You think the formula, you're referring to the four to the n? The barcode, yeah. Yes, under the heading barcode, exactly. McCloskey's characterization of the implication being that you could blow this up to as big as you want. Right, and that's exactly where I want to start because just to give context to this overall prior art theory, the original patent is a patent about this reflex method. It's actually one of the rare ones where it's pretty clear. The summary of the invention only refers to the reflex method. It's not one of these where there's a kitchen sink or vagueness. This is a typical thing we see actually in this particular industry of late claiming where they buy someone's patent applications and then re-mine it and create new claims. That itself isn't the sin, but it explains how we got here. When challenged, this is in their reply brief, as to where the invention's described, it's actually described in the invention of MID under TAG, which is in column six under the definition. So it's in the glossary section. And in that section, it always captures me, on six at 53, 54, 55, it says, well, these tags can range in length from two to a hundred nucleotides. This is at A75, column six at line 53 to 56 of the 981 patent. It's in each of the patents in the same text, basically. But in any event, the point is, it acknowledges and then it cites the prior art that tells you that these tags can be two to a hundred. So this sort of artificial idea that there's this boundary that prior artisans would feel about how long they could make things, is just conjured. It acknowledges prior art here. They tried to come up with a very broad thing, this dual tagging, and make an invention even though the patent doesn't defend that in any way because it's not about it at all. So that's how we got, that's why this is so weird. In terms of the references, the references are perfectly good references. One of them is just a routine use of tagging for the uniqueness of the cell. And the other one has the uniqueness of the cell or other features, and then the uniqueness of the molecules from the cell. And because tagging is so ubiquitous in the field, the basic theory is, here's one set of tags, here's another set of tags that solves the problem that the first prior art reference included. And so what this is an example of is this In Ray Keller case, which is a classic CCPA case about bodily incorporation, is what you're seeing is the tug of war. We're saying, they say you can use tags. They say it's a matter of the basic prior arts within the competency of a skilled artisan. They say you can use them for these different uses. No one's ever identified any challenge in scaling the number, or any challenge at all. In fact, reasonable expectation of success isn't even in their appeal brief. The issue to decide is just motivation to combine. And so there's no challenge. These are tags everyone uses all the time. None of that's denied. And they're trying to make this a Mr. Potato Head case, where, okay, you're taking the very specific experiment of each and putting them together. And it gets to, I think, a cartoonish point with respect to their seven nucleotide argument, which is really the heart of the appeal, because the other arguments fall away. The IPR petition does not mention this seven nucleotide barcode. It would be such an incredibly stingy reading of the petition to say that this was bound to the example in that reference, McCloskey, when it isn't even mentioned in the petition. If you then go to the expert report, which is where they can find it, it's under the reasonable expectation of success portion of the analysis. Intelligent Biosystems, which was referenced earlier... This is the Cooper declaration? Yes, Professor Cooper. He talks about it for... So it's not even in the right branch of the analysis. Intelligent Biosystems, the big issue there was, wait a minute, don't conflate motivation to combine and reasonable expectation of success, two different things. That's exactly what the whole theory of their appeal is here. Let me just also ask you some of the questions I asked the opposing counsel. One thing in particular is whether or not they're independent motivations to combine, or I think opposing counsel said that at least two of the ones I was discussing with him actually collapse into each other. Why don't you start there, and then I'll ask the follow-up. That's a great question. There's amplification bias, which is extremely potent. They don't even really have an argument to it other than the seven nucleotide barcode, because if you can flexibly use it, which was in the basic competence of New York, you're satisfied. On the basic design choice, that goes to understanding this case and the record by understanding how basic ligation is. I mean, ligation is like saying to someone that works with paper, use a paper clip or a staple for these artisans, and it's not denied. It's how you put DNA. If you have two pieces of DNA, you put them together, you ligate. That's how you do it. It's so basic, and this is very responsive to your question in the sense that what the board said is, these are basic skills in the art. How to use these things, tagging is simple. Maybe I'm missing something here. I'm trying to figure out whether or not these are independent. They are independent because it's like saying if you're working with paper and someone says, staple it or paper clip it, and you say, okay, I'll paper clip it, do you need a heavy motivation to choose between staple or clip? The basic point is it's so elementary to what these artisans are doing that you don't need to have some driving need, and the classic case is KSR, where that's what the whole point... In response to opposing counsel's statement that the final written decision stopped short of addressing all of the arguments that he contended needed to be addressed. He said part of it was addressed when we were looking at appendix pages. I think it was 37 to 38, but there should have been more that should have been done. If that's referring to amplification bias it's because which organisms you measure or whether you use just the sample ones you choose if you might want to do a subset let's say you're only interested in particular genes those all fall away if you don't accept this I think indefensible seven nucleotide barcode limitation Mr. Saunders said no, they don't fall away the only one he said I was listening extremely closely sample versus all that's the one I thought he was focusing mostly on I think what I heard because really they fall away is that there's this limit to linersin because it happens to have 20 nucleotides so you're always bounded by that 20 nucleotide so even if you could flexibly use more with McCloskey linersin would now be the limitation on the number they have to come up with a limitation on the number somewhere so they do it by this bodily incorporation linersin you'd just be working with the specific design they have there which has 20 nucleotides and that's where Cooper says for example you could take the 20 nucleotide tag and conceptually break it up into two it was an illustration for thought so the argument that I think they say still remains if you're limited to 20 even if you could scale because everyone knows you could just make more tags by increasing the length of the unique molecule from a cell tag then you'd run into the problem over on linersin because you're confined to 20 you probably had a good question I don't recall whether Cooper said anything about the point you're now making whether linersin is infinitely expansive so there's two things there was a reference of testimony where it says it could go to 20-30 I believe was there any suggestion that there's no linen that linersin is a concept but that concept can be expanded this is where I think a patent challenger can just have the patent document says it's prior art you could go 2-100 so why are we creating this false concept that there's a challenge of going over 20 when even the patent owner has never come forward I think Cooper said that it could go to 20-30 20 or 30 I don't have the 20-30 but it's all by there's two sources of limitation is there any conceptual limit a practical limit on how much linersin could be expanded because of the exponential nature as Judge Toronto said you get to 12 who needs but is there a practical constraint that comes into effect that's why I've been confused about why there's so much focus on the individual numbers when what we seem to be talking about is something that's more conceptual that's the issue this is all basic technique tagging, labeling ligating there isn't a technological limit let's just hold off on conceptual you've heard of no technological limit zero pages and pages of briefings no challenge to reasonable expectations so technologically there's no limit record in their own patent where they say it describes the invention you can do this 2-100 what this is it's a Keller problem trying to limit things to bodily incorporation you have to take the experiment of linersin and take the experiment of McCloskey and merge them and the numbers have to work and that's nonsense that wasn't the theory in the petition that's not what the art requires tags are known we put all that in it helps with amplification bias you might have an issue with amplification bias you put them together and you've got the claims they run from arguing the technology to arguing our theory in the petition that's an abuse of discretion standard and if they lose the abuse of discretion on this really indefensible limit it's not in the IPR petition it's not contained any reference to 7 nucleotides it's a little embarrassing that the petition is limited and the example is not in the petition that's what we've come to what's your best support for the explanation of flexibility flexibility the best portion of that is the point that there's two basic ways you can do this I think it's A8369 A8369-70 I believe that's where that is but in plain English with respect to flexibility it's just another way to do something that's basic in the art you either incorporate it through PCR or you ligate it those are your two basic points and to answer your honor the flexibility is when you just attach it on you don't have to do it during the initial incorporation you can do it later in the process so it gives you the flexibility to do the attachment of the tags and figure out how many tags you want later in the process so you're not doing it at the outset the pages you gave were from their reply I think so let me just check that I could certainly be wrong let me get this I guess I mean from your reply do you have pages in the petition I think it's I have it in the I have it in A1116 is the opening expert report where's our expert evidence on the point I asked the petition where does the petition have it's in paragraph 243 of A1116 I don't I don't yeah I don't know I don't think I have in front of me actually give me a second wait this was the original site I gave I thought you gave us reply citations the original thing I gave was the IPR petition at A8369 so when I look at A8369 it's page 20 of a document and I go back to page 1 and the title page in front of page 1 is petitioner's reply oh ok I see what you're saying yeah I think that is where we get into the flexibility particularity and why if that's where it gets introduced in your submission documents not evidence why is that not kind of shifting whatever the expression was focused on adding something that was not really part of the petition unless maybe the petition somewhere cites sure it does sites paragraph 243 of the cooper declaration this is the issue so among other points they had said that ligation is equivalent I think the argument was ligation is equivalent to incorporation so there's no additional benefit to doing it that way and that was the argument against the motivation to combine and that doesn't seem like a very strong position at all what the board stated was that the proposed modification was not beyond the skill level and the prior art would have taught that you could use ligation for this so they've admitted that it's conventional it says that in their own patent with respect to the ligation and the addition of the second tag with respect to both of those these are just basic tools in the art and I think there are records more than abundant that they were known to skilled artisans at the time thank you on the argument that everything falls away what you won't find is a finding from the board we'd have a different situation if the board had said we end our analysis here if that argument is going to be addressed it should be addressed in the first instance in connection with addressing that there isn't any testimony from Dr. Cooper that Linnerson is infinitely expandable it also wasn't their theory in their petition they said the method would be identical to the approach already set forth except that the tags in Linnerson would be conceptually divided into two portions that's 8067-8068 of the appendix sorry that is volume 3 of the appendix it would be identical except for they'd be conceptually divided which would fit in the McCloskey tag their petition doesn't say flex Linnerson it says identical to Linnerson they don't have expert testimony so if we are talking about this number of tags going up that would be something for the board to address on remand in terms of the 7 nucleotide I don't think that the board was off base when it said the petition clearly proposes using 7 nucleotides what they rely on in the petition is figure 1 which shows 7 nucleotides where in paragraph 192 of the Cooper declaration is where he talks about fitting the 7 nucleotide tag of McCloskey into Linnerson's barcode we can't rely on that paragraph as part of motivation I just want to point out coming full circle here that is the very paragraph that is their sole support for the one sentence design choice it's really the heart of Dr. Cooper's opinion and their theory of the case was take Linnerson as it is divide it and fit McCloskey in there when they wanted to go up in the other IPRs they brought in the McCloskey 2 reference it's a very stark contrast which is pointing to McCloskey pointing to the figure with 7 nucleotides when they wanted to have a different theory they brought in a different reference which is not part of any of the combinations in the first appeal it's only in the last rounds of the other appeals I think that's a telling sign that what the petition was saying was a different theory coming back to this substantially we went through the pages in the opening of the argument but their expert's own description of Linnerson as releasing all this mRNA so you'd be dealing with substantially all is the key missing piece in that part of the board's analysis because it's saying apply McCloskey to Linnerson it stops with this distinction between everything in the sample but it doesn't address our argument well hold on a minute the Linnerson sample they're pointing to is substantially all the mRNA just very briefly on the 013 patent the way it played out you can see what I was pointing to for example the patent owner's response round 6 has several sub-sections all of which deal with ligation the final section of the patent owner's response is this point where we are saying we don't understand what they're proposing to combine here it's going to this sort of McCloskey vs Linnerson they come back in their reply I didn't understand that point I'm sorry the point was apart from ligation going back to the basic combination of McCloskey with Linnerson in the other IPRs they had presented a theory as to why they would be combined and how they would be combined this points out you haven't done that here we don't know what your theory is they then come back in their reply and present their amplification bias argument and then we come back in our sur-reply and say hold on a second and make our full set of arguments where in your patent owner's response do you make the argument you just now identified that's what I wasn't able to find the way it plays out is the patent owner's response at 11382 unfortunately I pulled this out not out of the appendix so I don't have an appendix page but if you can give me a reference to the patent owner's response it's by page 49 in the 013 which is volume 2 it's really 48-49 can you also give us the appendix page the appendix page is 13381 13382 so there's been a discussion of ligation and then there's this separate sub-section at the end of the patent owner's response that says there's a lack of particularity in the petition we don't know what you're saying what exactly is this combination it hasn't been explained in the same way it was before they then come back in their reply and respond to that argument with their full set of arguments similar to what we see in the other appeal and we come back in our sur-reply at 13576 of that appendix with a section that says petitioner's motivation to combine still fails and you'll see page after page of us stressing the basic motivation to combine McCloskey and Linnerson if we were to disagree with your challenges to that basic Linnerson McCloskey why would any deficiency as in the OM3 on this point that you're just making be prejudicial it's prejudicial because there was even in the way they articulated it in the OM3 there was a slight difference in that they didn't have the conceptual division testimony it plays out slightly differently in the argument it may be that the board will reach the same result in the end I think it's one where we can't say oh it's harmless error we can't prejudge it there because there was that difference and so the board would have to look at it and say in your briefing to us do you make a harmfulness argument yes we do your honors in the OM3 in that section we finish by saying no there are differences here's page 32 of the blue brief this is right at the beginning of the argument section the first two pages so this final paragraph page 32 of the briefs the board's conclusions in the other proceedings can't excuse the lack of finding on the OM3 you make this point I just made they didn't make the same argument on the OM3 as they did there and they didn't dispute that in their opposition brief I'm not completely sure that that's the same thing as a harmfulness observation under 706 oh your honor I think it is because the board is charged with the fact finding here if you have an unaddressed argument if they don't line up one on top of one another isn't the 706 the rule of prejudice standard require you to say I've not only shown you that there are differences but why those differences could reasonably result in a different could reasonably lead to a different result right and so I think that here where the heart of their argument in the other proceedings is this conceptual division and you take it over to another proceedings ways it could lead to a different result are two fold one is substantively the board could say well we relied on that explanation in these other proceedings and it's not here and it fails but it also could be procedural and it's not here in this proceeding and it fails but it also could be a procedural change in which it would say we do see this as a deficiency because without that theory which was the heart of what you were offering in the other cases we're not sure what you're saying we're not sure how these pieces fit together so that would be so central it's in their other final written decisions and so to not have that in this proceeding thank you counsel the case is resumed